# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ALICIA M., | Case No.: 2:21-cv-00433-REP |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

Pending is Plaintiff Alicia M.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On May 31, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 7, 2015. The claim was originally denied on January 3, 2020, and again on reconsideration on March 13, 2020. On March 19, 2020, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 28, 2021, ALJ Marie Palachuk held a telephonic hearing, at which time Plaintiff, appearing with non-attorney representative Dorene Carney, testified. Stephen H. Andersen, M.D., an impartial medical expert, and K. Diane Kramer, an impartial vocational expert, also appeared and testified at the same hearing

On March 3, 2021, the ALJ issued a decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council. On September 7, 2021, the Appeals Council denied

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Petitioner is now represented by attorneys David Chermol and Daniel Luker and, having exhausted her administrative remedies, brings this case. She raises three points of error: (i) the ALJ failed to consider whether her physical impairments impacted her functioning to the point of precluding work for any twelve-month period; (ii) the ALJ mischaracterized the medical opinion evidence; and (iii) the ALJ and Appeals Council members had no legal authority to adjudicate this case because they were not properly appointed. Pl.'s Brief at 1-2, 7-17 (Dkt. 14). Plaintiff requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits, or remand the case for further proceedings. *Id.* at 18.

## II. **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

**MEMORANDUM DECISION AND ORDER - 3**

or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the

claimant has engaged in SGA, disability benefits are denied regardless of her medical condition,

age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has

not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff

did not engaged in SGA between August 7, 2015 (the alleged onset date) and December 30, 2020

(her date last insured).  AR 25 (ALJ stating that Plaintiff was not engaged in SGA, "although

judicial notice is taken that the claimant was earning a dollar amount that is equivalent to, or

exceeds, the SGA amount for most of the time period at issue.").

　　　　The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it

does not significantly limit the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe

medically determinable impairments: "concussion secondary to a MVA in 2015, degenerative

disc disease of the cervical spine with anterior cervical discectomy and fusion (ACDF) in 2016,

degenerative disc disease of the lumbar spine status post two surgeries (January 2017 and June

2018), and headaches."  AR 26.

　　　　The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 4**

Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ

concluded that Petitioner's above-listed medically determinable impairments, while severe, do

not meet or medically equal, either singly or in combination, the criteria established for any of

the qualifying impairments. AR 27-28.

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her

ability to do physical and mental work activities on a sustained basis despite limitations from her

impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work lasted long enough for the claimant to learn to do the job and be engaged

in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) except as follows: her ability to stand
> and walk would be limited to 4 hours in an eight-hour day, so she needs the ability
> to alternate sitting and standing every 60 minutes; she could perform all postural
> activities occasionally, except she could never climb ladders, ropes, or scaffolds.
> She could reach overhead bilaterally frequently, should avoid concentrated
> exposure to extreme cold and hazards, could have moderate exposure to excessive
> noise, and must avoid concentrated exposure to bright lights.

AR 28.

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of her impairments, the burden shifts to the Commissioner to show

**MEMORANDUM DECISION AND ORDER - 5**

that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured, but was nonetheless capable of working full-time in the following occupations: office helper, collator operator, and mail clerk.  AR 32-33.  Based on these findings, the ALJ concluded that Plaintiff was not under a disability from August 7, 2015 (the alleged onset date) through December 30, 2020 (her date last insured).  AR 33.

**B.    Analysis**

    1.    <u>The ALJ Reasonably Considered Plaintiff's Treatment Records</u>

In her first contention of error, Plaintiff argues that the ALJ failed to consider whether she was precluded from work for *any* twelve-month period since her alleged onset date, i.e., whether the evidence supported a closed period of disability.  Pl.'s Brief at 7-13 (Dkt. 14).  Under the regulations, a person is disabled if she is unable to engage in any SGA "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. §§ 404.1505(a), 416.905(a).  Relatedly, an ALJ must consider a closed period of disability if evidence supports a finding that a person is disabled for a period of at least twelve months.  *See Reynoso v. Astrue*, 2011 WL 2554210 at *3 (C.D. Cal. 2011).

Here, Plaintiff asserts that, in crafting her RFC, the ALJ improperly focused on her apparent improvement as of February 2019, following three surgical procedures to her back.  Pl.'s Brief at 8 (Dkt. 14).  Plaintiff implies that her condition after these surgeries was wholly

**MEMORANDUM DECISION AND ORDER - 6**

unlike her condition before these surgeries and yet, despite this contrast, the ALJ posits a single RFC reflecting the same set of limitations before and after the procedures. *Id.* According to Plaintiff, the ALJ erred in failing to analyze whether she was disabled at any time *before* February 2019. *Id.* at 8-9 ("While improvement is always possible, this conclusion was marred by the ALJ's failure to meaningfully review, evaluate, or consider what limitations [Plaintiff] experienced prior to her cervical and lumbar surgeries and prior to her purported improvements in 2019."). This argument is without merit.

First, Plaintiff overstates the degree of any improvement beginning in February 2019 and, likewise, exaggerates the ALJ's reliance on the same when assessing her RFC. *See id.* at 8 (Plaintiff stating that "the ALJ's decision *relies heavily* on [her] supposed improvement in 2019") (emphasis added). This is predictable since a period of improvement might demarcate the boundaries – at least the endpoint – of an earlier, closed period of disability. In other words, without a period of improvement, there would be no separate, closed period of disability upon which to base a challenge to an ALJ's disability determination. But, here, a review of the ALJ's decision reveals that Plaintiff's improvement over time is more tempered than she now describes.

To that point, the February 2019 (and beyond) improvements that the ALJ specifically discussed related to Plaintiff's migraine headaches. AR 30 ("On February 18, 2019, the claimant reported her headaches had gone down to 2-3 in the last month since receiving Botox injections. Pain management records indicate her headaches were medically managed with Cymbalta, Topomax, and Botox injections every 12 weeks."). *These* improvements are not obviously a function of Plaintiff's back surgeries but, instead, the efficacy of Plaintiff's treatment for her migraine headaches. AR 30-31 ("On June 17, 2019, the claimant's symptoms appeared well managed on Topomax and Botox. She reported 80% improvement with Botox. . . . The most recent medical evidence of record reflects continued improvement in the claimant's headaches.

**MEMORANDUM DECISION AND ORDER - 7**

On December 22, 2020, the claimant reported 90% decrease in frequency and 50% decrease in duration of headaches.").

As a result, there is no evidence to suggest that the improvements referred to by the ALJ were related to the conditions that precipitated Plaintiff's back surgeries in the first instance. Yet, Plaintiff's argument depends on that non-existent connection to highlight a possible closed period of disability. *See* Pl.'s Brief at 8 (Dkt. 14) ("[T]he ALJ gave ZERO consideration to what occurred prior to these surgeries rendering these invasive procedures necessary."). Regardless, despite Plaintiff's eventual improvements to her migraine headaches, the ALJ incorporated their pre-improvement limitations within her RFC. *Compare* AR 30, *with* AR 28 (ALJ noting that Plaintiff's diagnosed migraines headaches were historically aggravated by bright lights and noise, in turn limiting Plaintiff to moderate exposure to excessive noise and avoiding concentrated exposure to bright lights).

Second, the ALJ's decision states that Plaintiff was not disabled from August 7, 2015 (the alleged onset date) through December 30, 2020 (her date last insured). AR 33. There is no indication that, in making this determination, the ALJ did not consider the pre-February 2019 closed period of disability, or that the ALJ otherwise jumped ahead of that period when fashioning the RFC as Plaintiff argues. The record actually belies any such argument.

For example, as part of her discussion of the entire medical evidence, the ALJ considered progress notes and treatment records from 2015, 2016, 2017, 2018, and 2019 when recounting Plaintiff's condition over this span. AR 29-30 (citing AR 383-410, 436-41, 481-527, 605-760, 1151-1639, 1869-2206). Far from glossing over Plaintiff's limitations during this time in favor of a perceived period of improvement after February 2019, the ALJ specifically referenced how Plaintiff "has continued to experience chronic pain affecting the lower back, bilateral hips, and lower extremities," while noting that Plaintiff "has been diagnosed variously with radiculopathy

**MEMORANDUM DECISION AND ORDER - 8**

of the sacrococcygeal region, lumbar radiculopathy, failed back syndrome, cervicalgia, and history of cervical spine fusion." *Id*.  These findings align with the ALJ's step-two determination that Plaintiff suffers from several impairments, including degenerative disc disease of the cervical and lumbar spine, that negatively impact her ability to perform work-related activities.  AR 26.  The ALJ's RFC incorporates the limitations that correspond to these impairments.  AR 29 (ALJ stating that Plaintiff's RFC "is based on the severity of the claimant's degenerative disc disease of the cervical spine with anterior cervical discectomy and fusion (ACDF), degenerative disc disease of the lumber spine status post two surgeries").

Given this context, there is no basis to claim that the ALJ's RFC was not meant to be representative of Plaintiff's functioning during the requested closed period of disability, as opposed to after she had allegedly improved.  To the contrary, the ALJ's conclusion that Plaintiff was not disabled during the relevant time period means that Plaintiff was not entitled to a closed period of disability at any time during that same period.

Third, Plaintiff's argument for a closed period of disability relies on instances in the record where her impairments and related symptoms are verified in the three years leading up to February 2019, before reframing the issue as the ALJ's failure to recognize as much.  Pl.'s Brief at 9 (Dkt. 14).  In doing so, Plaintiff points to those "three preceding years during which she underwent four separate surgeries, at least seven rounds of physical therapy, a multitude of medical tests, and dozens of therapeutic injections." *Id*.[1]  These records confirm that Plaintiff suffers from certain impairments and that such impairments are painful and impact her ability to

---

[1]  Though the thrust of Plaintiff's argument in this regard is that the ALJ did not consider a closed period of disability before February 2019, she nonetheless includes medical records in 2019 and 2020.  Pl.'s Brief at 9 (Dkt. 14) (citing AR 2408-17, 2446-48, 2472-73, 2487-88, 2549-52, 2560-63, 2706, 2712, 2718, 2723-27, 2754, 2672-85).

**MEMORANDUM DECISION AND ORDER - 9**

work.  But this is undisputed.  The ALJ acknowledged that Plaintiff suffers from degenerative

disc disease and that it is severe.  AR 26.[2]

Crucially, the issue is not whether such impairments, symptoms, and limitations exist

(they absolutely do), but the extent to which they prevent Plaintiff from working at all.  To that

end, the ALJ specifically accounted for the Plaintiff's impairments and corresponding limitations

within his RFC.  AR 28 ("[T]he claimant had the residual functional capacity to perform light

work . . . except as follows . . . ."); AR 31 (Plaintiff's complaints "have been included in the

residual functional capacity to the extent that they are consistent with the evidence as a whole");

AR 32 ("The location, duration, frequency, and intensity of the claimant's alleged symptoms, as

well as precipitating and aggravating factors are adequately addressed and accommodated in the

above residual functional capacity.").  Plaintiff's references to certain medical records, without

more, do not show inconsistencies with the ALJ's RFC, if at all.  Therefore, where Plaintiff's

argument for a closed period of disability hinges upon the mere existence of certain limiting

impairments or symptoms, it misses the point because the ALJ already recognized such

limitations and incorporated them into Plaintiff's RFC.

Fourth, Plaintiff's attempt at proving disability by virtue of her excessive absences from

work during the alleged closed period of disability (and beyond) is unpersuasive.  In support of

---

[2]  Plaintiff also claims that the ALJ "completely failed to even acknowledge [her] persistent left should pain which was diagnosed as bursitis and required an arthroscopy and subacromial decompression for repair in September 2017."  Pl.'s Brief at 9 (Dkt. 14) (citing AR 781-82).  However, Plaintiff did not offer any testimony concerning this separate condition at the hearing.  AR 50-56.  Moreover, Plaintiff does not synthesize this argument with references to the record to contrast the RFC's existing lifting/reaching limitations.  Finally, two months after her shoulder surgery, Plaintiff's "PT Daily Note" highlighted how (i) she "has very little pain now," (ii) her left shoulder's active range of motion "is within the same range as the right in all directions," and (iii) she has "[g]ood tolerance to progressions in strengthening."  AR 866-67; *see also* AR 48 (impartial medical expert, Dr. Andersen, testifying that that "the shoulder and clavicle wasn't significant").

**MEMORANDUM DECISION AND ORDER - 10**

her argument, Plaintiff references the vocational expert's testimony that an employer would tolerate only 12 absences per year.  Pl.'s Brief at 10-11 (Dkt. 14) (citing AR 65-66).  She then adds that, "[b]ased on physical therapy, radiology, and surgical intervention alone, [her] records show that she inevitably would have exceeded the maximum 12 absences tolerated in competitive work activity and could not possibly have engaged in competitive, full time work between August 2015 and December 2020."  *Id*. at 11.  The necessity to attend medical appointments, however, does not amount to a medically determinable impairment.

Even if appointments are necessary following surgery, it does not mean that a claimant would be required to attend follow-up appointments indefinitely; nor does it mean she could not perform work on a regular and continuing basis.  *Goodman v. Berryhill*, 2017 WL 4265685 at *3 (W.D. Wash. 2017) (citing *Razo v. Colvin*, 663 Fed. Appx. 710, 717 (10th Cir. 2016)).  To be able to perform work "on a regular and continuing basis," a claimant need not keep a particular work schedule.  20 C.F.R. § 404.1545(b) & (c) (assessing physical and mental limitations to "determine your residual functional capacity for work activity on a regular and continuing basis").  Rather, work "on a regular and continuous basis . . . means 8 hours a day, for 5 days a week, *or an equivalent work schedule*."  SSR 96-8p, 1996 WL 374184 at *1, 2 (July 2, 1996) (emphasis added).  The frequency of medical appointments alone does little to inform this issue, especially when there is no evidence in the form of a medical opinion that Plaintiff would frequently miss work due to medical appointments, and nothing to suggest that Plaintiff could not have scheduled her medical appointments outside of working hours.  *Goodman*, 2017 WL 4265685 at *3; *see also Cherkaoui v. Comm'r of Soc. Sec.*, 678 Fed. Appx. 902, 904 (11th Cir. 2017) ("The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities.  Moreover, nothing in the record indicates that [claimant] was required, or would be required, to schedule her medical

**MEMORANDUM DECISION AND ORDER - 11**

appointments during working hours so that they would interfere with her ability to obtain work.").  At bottom, when assessing a claimant's RFC, an ALJ properly focuses on the functional limitations and restrictions resulting from medically determinable impairments, not the frequency of a claimant's medical appointments.  *Goodman*, 2017 WL 4265685 at *2.

The ALJ thus appropriately considered the evidence throughout the alleged disability period and concluded that Plaintiff was not disabled at any point during that time.  Plaintiff views the evidence differently.  Except, even assuming the evidence is susceptible to more than one rational interpretation, the Court is required to uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  Because the Court cannot say the ALJ's determination is unreasonable and not supported by substantial evidence, the Court will not disturb the ALJ's finding.

Reversal is not warranted on this issue.

2.      <u>The ALJ Reasonably Considered the Medical Opinion from Bret Dirks, M.D.</u>

In her second contention of error, Plaintiff argues that the ALJ erred in rejecting the medical opinion of her neurosurgeon, Dr. Dirks.  Pl.'s Brief at 13-16 (Dkt. 14).  In a February 28, 2019 "progress note," Dr. Dirks stated that Plaintiff  "is not able to fulfill job requirements at this time because she is not able to sit for any length of time and would have to take constant breaks and have to miss work."  AR 2400.  The ALJ found this opinion unpersuasive and inconsistent with other evidence of record, noting how it "is contradicted by the physical examinations showing normal gait and good lower extremities strength, and moderation of symptoms with medical management, ongoing work history, and multiple notations in treatment notes about improvement of symptoms."  AR 31.  Plaintiff contends that the ALJ improperly assessed Dr. Dirk's opinion by mischaracterizing Plaintiff's treatment relationship with Dr. Dirks

**MEMORANDUM DECISION AND ORDER - 12**

at the outset, and failing to support her rejection of Dr. Dirks's opinion with substantial evidence in any event.  Pl.'s Brief at 14-16 (Dkt. 14).  These arguments are without merit.

Because this case was filed after March 17, 2017, the revised regulations governing the ALJ's evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors.  20 C.F.R. § 416.920c(a).  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."  20 C.F.R. § 404.1520c(c)(2).  The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).

**MEMORANDUM DECISION AND ORDER - 13**

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The ALJ's consideration of Dr. Dirks's opinions satisfies this standard.

First, while it can be argued that the ALJ mistakenly referred to Dr. Dirks's opinion as a "consultative examination opinion,"[3] any error in doing so is immaterial. As stated above, there is no immediate deference given to a treating source's opinions. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). The current standard is simple persuasiveness, measured against an opinion's supportability and consistency, and generally independent of a provider's treatment relationship. 20 C.F.R. § 404.1520c(b)(2)-(3); *see also Woods*, 32 F.4th at 792 ('[T]he ALJ no longer needs to make specific findings regarding these relationship factors."). It is therefore incorrect to imply, as Plaintiff does here, that the ALJ erred when she failed to consider whether [Dr. Dirks's] experience with [Plaintiff] supported his opinion." Pl.'s Brief at 15 (Dkt. 14).

Second, on the issue of persuasiveness, the ALJ criticized Dr. Dirks's opinion because the limitations reflected therein were unexplained – particularly when contrasted with Dr. Dirk's other findings. AR 31. This reasoning invokes the supportability factor which considers the relevant objective medical evidence and supporting explanations for a medical opinion. *Supra* (citing 20 C.F.R. § 404.1520c(c)(1)). From Dr. Dirk's February 28, 2019 progress note, he states

---

[3] Plaintiff appropriately points out that Dr. Dirks treated Plaintiff over a period of time. Pl.'s Brief at 14-15 (Dkt. 14). The ALJ's reference to Exhibit 38F ironically confirms this. AR 31 (citing AR 2392-2429 (referencing Dr. Dirks's treatment notes from May 2018 through December 2019)); *see also* AR 1773-1803 (same).

that Plaintiff cannot work due to her sitting limitations, need to take constant breaks, and anticipated absences, but fails to explain or supply the clinical findings to support this opinion. Notably, the Ninth Circuit has concluded that an ALJ may discount such unsupported opinions. *Batson*, 359 F.3d at 1195 n.3 (brief and conclusory report did not provide support for limitations assessed in the absence of objective medical evidence in the physician's treatment notes); *Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'") (quoting 20 C.F.R. § 404.1520c(c)(1)).

Up to that point, Dr. Dirk's treatment notes unquestionably confirm that Plaintiff suffers from low back pain and right lower extremity pain.  But as the ALJ emphasized, Dr. Dirk's treatment notes during that time also reveal that Plaintiff had a normal gait (AR 2400), exhibited good strength in her lower extremities (AR 2400, 2401-04), showed improvement of symptoms with injections (AR 2402), and even was back to work in an office setting (AR 2401).  These contemporaneous findings do not necessarily prove that Plaintiff is able to work, or even that Dr. Dirk's opinion about Plaintiff's limitations are at odds with his treatment notes.  Relevant here, however, they highlight how Dr. Dirk's point-in-time opinion about Plaintiff's limitations is isolated and unsubstantiated.

Plaintiff does not seriously point to contrary evidence elsewhere within Dr. Dirk's treatment notes, except to note that she was "absolutely miserable" during this time and that a lumbar MRI "showed operative hardware in place, but also an L5-S1 disc protrusion abutting the left S1 nerve root with degenerative changes at L2-3 and L3-4."  Pl.'s Brief at 5-6 (Dkt. 14) (citing AR 1752-53).  But again, there is no dispute that Plaintiff suffers from severe back impairments that are painful and cause more than a minimal effect on her ability to perform work-related activities.  AR 26.  This is not enough to establish a disability.  *See Mullis v. Astrue*,

**MEMORANDUM DECISION AND ORDER - 15**

2012 WL 71708 at *6 (C.D. Cal. 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working"); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute.").

And the above-referenced February 23, 2019 lumbar MRI, while perhaps confirming Plaintiff's objective conditions, did nothing to corroborate the limitations expressed in Dr. Dirk's opinion just five days later.  To be sure, (i) the disc protrusion at Plaintiff's L5-S1 abutted the left S1 nerve root but did not displace it, rendering "[i]ts clinical significance indeterminate"; (ii) the discogenic degenerative changes at L2-3 and L3-4 were "minor"; and (iii) certain of the findings "are so common in people *without* low back pain that while we report their presence, they must be interpreted with caution and in the context of the clinical situation."  AR 1753.  Even if these records could be interpreted to support Dr. Dirk's opinion, Plaintiff's argument amounts to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred.  *Ludwig*, 681 F.3d at 1051.

Third, Plaintiff's same references to "the record's undeniable support for [Plaintiff's] inevitably-excessive absenteeism over the duration of her disability" suffer from the same shortcomings referred to above vis à vis Plaintiff's claim for a closed period of disability. *Compare* Pl.'s Brief at 11, *with* 15-16 (Dkt. 14).  Absences brought on by medical appointments do not represent functional limitations attributable to impairments.  *Supra* (citing *Goodman*, 2017 WL 4265685 at *2-3; *Cherkaoui*, 678 Fed. Appx. At 904).

With these reasons in mind, the ALJ adequately explained her findings concerning Dr. Dirk's opinion.  There is room to argue that the ALJ could have been clearer and more fulsome in this regard, but the Court is able to discern from the context of the decision that the ALJ

**MEMORANDUM DECISION AND ORDER - 16**

discounted Dr. Dirk's opinion because of supportability issues.  *Sanchez v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4798452 at *14 (D. Ariz. 2022) ("an 'incantation' of 'magic words' is not required of an ALJ, only sufficient explanation to allow 'specific and legitimate inferences' from the decision to allow the court to conclude that the applicable standard has been met.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).  Plaintiff believes that the ALJ did not give Dr. Dirks's opinion the weight it deserved, but the ALJ considered it against the surrounding medical record and decided that it lacked supportability under the regulations. Because the evidence can reasonably support the ALJ's conclusion in this respect, the Court will not substitute its judgment for that of the ALJ's – even if the Court were to have a different view. *Richardson*, 402 U.S. at 401.  Accordingly, the ALJ's evaluation of Dr. Dirks's opinion is supported by substantial evidence.

Reversal is not warranted on this issue.

### 3.    The ALJ and Appeals Council Members Were Properly Appointed

In her third and final contention of error, Plaintiff argues that the ALJ and Appeals Council members were not properly appointed by then-Acting Commissioner Nancy Berryhill or any subsequent commissioner.  Pl.'s Brief at 16 (Dkt. 14).  Commissioner Berryhill began serving as Commissioner on January 20, 2017.  *Id*.  Under the Federal Vacancies Reform Act ("FVRA"), and according to Plaintiff, Commissioner Berryhill's term ended 210 days later on November 16, 2017.  *Id*.  Plaintiff urges that, as of November 17, 2017, Ms. Berryhill had no lawful right to serve as the head of the Social Security Administration.  Pl.'s Reply at 7 (Dkt. 16).  Yet she did continue to serve, with Ms. Berryhill purportedly reappointing the ALJs of the Social Security Administration, including both ALJs and Administrative Appeals Judges, on July 16, 2018.  *Id*. at 7-8; Pl.'s Brief at 16-17 (Dkt. 14) ("Because these faux appointments occurred more than 210 days after Ms. Berryhill became Acting Commissioner, she no longer had any

**MEMORANDUM DECISION AND ORDER - 17**

legal authority as Acting Commissioner under the FVRA to make such appointments."). Plaintiff claims that this "illegal action violated both the FVRA and separation of powers by infringing on the Senate's 'advice and consent' power." Pl.'s Reply at 7 (Dkt. 16). Plaintiff relies on *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), to support her position.

Defendant concedes that Ms. Berryhill served as Acting Commissioner from January 21, 2017, until November 16, 2017, when her initial 210-day period for acting service under the FVRA expired. Def.'s Brief at 6 (Dkt. 15). But Defendant adds that, when then-President Donald Trump nominated Andrew Saul to serve as Commissioner on April 17, 2018, Ms. Berryhill resumed service as Acting Commissioner during the nomination's pendency. *Id*. Defendant relies upon the language of 5 U.S.C. § 3346(a)(2) and decisions from numerous district courts that have interpreted that statute as containing a "spring-back" provision that permitted Ms. Berryhill to resume her role as Acting Commissioner as of the date of Mr. Saul's nomination. *Id*. at 6-15. The Court agrees with Defendant and those other courts that have already considered this issue.

The FVRA's prescribed time limits for acting service are found in 5 U.S.C. § 3346. Section 3346 provides:

    (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office –

        (1) for no longer than 210 days beginning on the date the vacancy occurs; or

        (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a). The issue here is whether subsection (2) is a "spring-back" provision. Consistent with *Brian T.D.*, Plaintiff's interpretation is that the person serving as an acting officer may serve during the 210-day period and also during the pendency of a nomination, *but*

*only if* the nomination was submitted during the 210-day period.  Pl.'s Brief at 17 (Dkt. 14)

(citing *Brian T.D.*, 580 F. Supp. 3d at 631-32 (reasoning that "or" served to suspend the time

limitation, not to create an entirely separate and non-contiguous period of service)).  Defendant's

interpretation is that active service is permitted during either or both of the two referenced

periods: (i) 210 days after the vacancy, or (ii) during the pendency of a first or second

nomination.  Def.'s Brief at 7-8 (Dkt. 15).  The Court agrees with Defendant.

By using the disjunctive "or," the FVRA contains a "spring-back" provision that enabled

Ms. Berryhill to resume her role as Acting Commissioner as of the date that Mr. Saul was

nominated for Commissioner in April 2018.  *See Williams v. Kijakazi*, 2022 WL 2163008 at *3

(W.D.N.C. 2022) (the FVRA "provides a single trigger for permissible service during a first or

second nomination's pendency: the submission of the nomination.").  Thus, under section

3346(a)(2)'s plain text, "'once' Mr. Saul's 'nomination for the office' of Commissioner '[wa]s

submitted to the Senate,' Ms. Berryhill could serve 'for the period that the nomination [wa]s

pending in the Senate.'"  *Id*. (quoting 5 U.S.C. § 3346(a)).  Legislative history tracks this

commonsensical approach.  S. Rep. No. 105-250 at 14 (1998) (an "acting officer may serve even

if the nomination is submitted after the [210] days has passed although . . . the acting officer may

not serve between the [210th] day and the day the nomination is submitted"); *see also* 23 U.S.

Op. Off. Legal Counsel 60, 68 (1999) ("The Vacancies Reform Act incorporates a spring-back

provision, which permits the acting officer to begin performing the functions and duties of the

vacant office again upon the submission of a nomination, even if the 210-day period expired

before that nomination was submitted.").

The overwhelming majority of courts that have addressed this issue agree that, pursuant

to section 3346(a)(2), Ms. Berryhill resumed her role as Acting Commissioner upon Mr. Saul's

April 2018 nomination.  *Williams*, 2022 WL 2163008 at *4 (listing cases); *see also* Def.'s Brief

**MEMORANDUM DECISION AND ORDER - 19**

at 8-9 (Dkt. 15) (listing cases).  Indeed, the United States Court of Appeals for the Eighth Circuit recently reversed and remanded *Brian T.D.* in *Dahle v. Kijakazi*, 2023 WL 2379383 at *4 (8th Cir. 2023) ("Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs.  Therefore, we reverse the grant of summary judgment and remand for further proceedings on the merits.").[4]  There, the Eight Circuit aligned itself with those courts in other circuits that have found that section 3346(a)(2) operates as a "spring-back" provision and, as such, Ms. Berryhill's acting service complied with the FVRA during the pendency of Mr. Saul's nomination.  *Id*. at *3 ("This is what other courts to address the issue have decided.").

Because Ms. Berryhill was properly serving as Acting Commissioner under the FVRA at the time she ratified the appointments of the ALJs and Administrative Appeals Judges in July 2018, Plaintiff's argument that the ALJ and Appeals Council members did not have legal authority to adjudicate this case is without merit.

Reversal is not warranted on this issue.

## IV.  CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ has provided reasonable and rational support for her conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based upon proper legal

---

[4]  This decision was published on March 7, 2023 – after the parties' briefing was filed with the Court.  However, Plaintiff made no effort to supplement her filings before Defendant's March 24, 2023 Notice of Supplemental Authority (Dkt. 18).

standards and supported by substantial evidence.  The Commissioner's decision is affirmed and Petitioner's Petition for Review is denied.

## V.  **ORDER**

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED and the decision of the Commissioner is AFFIRMED.

DATED:  March 31, 2023

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge